UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CITY OF LIVONIA EMPLOYEES'
RETIREMENT SYSTEM, Individually
and on Behalf of All Others Similarly
Situated

          Plaintiff,          Case No. 16-12229
v                                               Honorable Thomas L. Ludington

TALMER BANORP, INC., et al.,

          Defendant.
_____/

**ORDER STAYING CASE PENDING APPEAL AND HOLDING IN ABEYANCE
MOTION TO DISMISS**

On June 16, 2016, Plaintiff Livonia Employees' Retirement System ("Livonia") filed a Complaint against Defendants Talmer Bancorp ("Talmer"), individual members of Talmer Bancorp's Board of Directors ("Talmer Board"), and Chemical Financial Corporation ("Chemical"). Compl. at 1, ECF No. 1. Livonia is a shareholder of Talmer. *Id.* Livonia brought suit challenging Chemical's merger with Talmer. *Id.* at 2–3. It alleges that Defendants are responsible for a false and misleading proxy and thus violated §14(a) of the Securities Exchange Act of 1934 ("1934 Act") and SEC Rule 14a-9. *Id.* at 45–46. Livonia also alleges that the individual Defendants and Chemical are liable as controlling persons of Talmer pursuant to §20(a) of the 1934 Act. *Id.* at 47–49. Livonia further alleges that the action is brought on behalf of a class of all Talmer's public shareholders and that class certification is appropriate. *Id.* at 44–45. Livonia filed a motion for appointment of lead counsel and to proceed as lead plaintiff. ECF No. 18. It was granted as unopposed on September 14, 2016.

On October 3, 2016, the Court directed Livonia to show cause why the case should not be dismissed for failure to prosecute. ECF No. 23. In response, Livonia explained that a related action for breach of fiduciary duty was pending in state court before Judge Potts. ECF Nos. 27, 47-3. On October 18, 2016, the Court adopted a stipulated proposed order which stayed this case pending resolution of the motions for summary disposition in the state court action. ECF No. 28. Pursuant to the stipulation, the parties were to submit a proposed scheduling order or closing documents, as appropriate, within thirty days after rulings on the motions for summary disposition. *Id.*

On June 30, 2017, the Court issued a second order to show cause. ECF No. 29. In the order, the Court explained that it had reviewed the state court docket in question and determined that the summary disposition motions had been resolved. *Id.* at 2. In response, Livonia explained that Defendants' motions for summary disposition in the state court proceeding had been granted in part and denied in part. ECF No. 30. At the time, the Talmer Defendants were seeking leave to appeal the state court decision. *Id.* The Court dismissed the order to show cause and maintained the stay, but directed the parties to file a status report on September 29, 2017. ECF No. 31.

On October 18, 2017, the Plaintiff filed a status report. ECF No. 32. Plaintiff indicated that the Talmer Defendants' request for interlocutory relief had been rejected. A separate but related state court action, *Nicholl v. Torgow, et al*, was filed on July 31, 2017 and assigned to Judge Potts. ECF No. 47-2. At the time, dispositive motions had been filed in both cases. Thus, Plaintiff requested that the stay remain in place until those motions were resolved.

On November 13, 2017, the Court once again issued an order to show cause requiring Plaintiff to demonstrate why the case stay should not be lifted. ECF No. 37. In response, both Plaintiff and Defendants agreed that the case stay should be lifted, but disagreed over whether Plaintiff should be permitted to utilize discovery which it received in the state court actions but

which was restrained by a protective order. On May 22, 2018, the Court held a telephonic status conference with the parties. Days prior to that conference, Judge Potts dismissed the state court actions. The Court directed the parties to submit supplemental briefing discussing the impact, if any, that the resolution of the state court cases had on the pending federal action. After receiving the briefing, the Court determined that the stay would be lifted and that the discovery from the state court actions would continue to be restrained by its protective order. ECF No. 44. On July 27, 2018, Livonia filed an Amended Complaint. ECF No. 46.

Defendants now move for dismissal of Plaintiff's federal claims. ECF No. 47.

## I.

Livonia's amended complaint raises two causes of action against Defendants. Count I alleges that Talmer and the individual Defendants violated §14(a) of the 1934 Act and SEC Rule 14a-9. ECF No. 46 at 40–42. Livonia claims that these Defendants were responsible for misleading statements and material omissions within the Talmer Board's proxy statement. Count II alleges that Chemical and the individual Defendants violated §20(a) of the 1934 Act and SEC Rule 14a-9. *Id.* at 42–45. Livonia claims that under these provisions, Defendants were controlling persons of Talmer and are therefore liable for the proxy statement's misleading statements and material omissions.

### A.

Livonia's Amended Complaint alleges the following material information. Prior to its merger with Chemical, Talmer was a bank with 181 branches throughout the Midwest. ECF No. 46 at 14. It planned to expand its branch banking and acquire other banks, particularly those banks that were "underperforming and undercapitalized." *Id.* To accomplish this, the Talmer Board created a subcommittee of directors, the Strategic Initiatives Committee ("Committee"). *Id.* at 15.

The Committee was to work with Talmer's management team to evaluate potential acquisitions. *Id.*

From 2010 to 2015, Talmer acquired various banks throughout the Midwest. ECF No. 46 at 15–18. Its value increased and by early 2016, its asset base was approximately $6.6 billion. *Id.* at 18. In multiple 2015 press releases, Talmer asserted that it was "well-prepared to pursue additional acquisitions." *Id.* at 19–20. In its February 2016 Form 10-K, Talmer stated that it would continue to seek opportunities to acquire other banking institutions. *Id.* at 20–21.

During this time, Talmer's financial advisors were Keefe, Bruyette & Woods, Inc. ("KBW"). ECF No. 46 at 2. KBW had also served as a financial advisor for Chemical Bank in multiple transactions valued between $26 and $184 million from 2013 to 2015. *Id.* at 22. Jim Harasimowicz was the KBW primary relationship banker with Chemical. *Id.* at 21. He also served as KBW's lead banker in KBW's advisory role for Talmer. *Id.*

In 2014, KBW advised Talmer to consider merging with Chemical. ECF No. 46 at 21. The Talmer Board granted KBW approval to contact Chemical on the subject. *Id.* at 21. Following an introduction from KBW, members of the Talmer Board and the Chemical Board began meeting to discuss the possibility of a merger. *Id.* at 22–23. These discussions were put on hold during the time that Chemical was acquiring Lake Michigan Financial, for which KBW was acting as financial advisor for Chemical. *Id.* at 23. KBW continued to encourage Talmer to pursue a merger with Chemical. *Id.* Discussions between Talmer and Chemical resumed after Chemical's acquisition of Lake Michigan Financial. *Id.*

In July 2015, KBW gave a presentation to the Chemical Board of Directors about the potential impact of merging with Talmer. *Id.* at 23–24. In October 2015, KBW prepared a similar presentation for the Chemical management team. *Id.* at 24. A few days later, KBW presented the

Talmer Strategic Initiatives Committee with information outlining the potential impact of a merger with Chemical. *Id.* at 24. KBW also prepared a financial analysis of Talmer's forecasted development and value. *Id.* at 27. The resulting valuation range was $13.22 to $21.10 per share. *Id.* at 28.

In June 2015, the Talmer Board approved KBW to act as Talmer's financial advisor in the transaction. *Id.* at 23. In early July 2015, Talmer and KBW executed an engagement letter. *Id.* At this time, KBW had not yet disclosed to the Talmer Strategic Initiatives Committee that it had been advising Chemical on the potential merger with Talmer. *Id.* at 24. It was not until November 2015 when the Committee and KBW met to execute an updated engagement letter that KBW disclosed that it had performed financial services for Chemical in the past. *Id.* However, Livonia alleges that KBW only disclosed this to the Committee, not the full Talmer Board. *Id.* at 24–25. Livonia further claims that KBW never disclosed "to either the Strategic Initiatives Committee or the Talmer Board that it had provided financial advice to Chemical on an acquisition of Talmer." *Id.* at 25.

As the transaction continued to develop, members of the Talmer Board began negotiating their future employment and benefits with Chemical. *Id.* at 25. These requests were made before the parties had reached a final price on the merger. *Id.* Ultimately, the Merger Agreement appointed Defendant Torgow as Chairman of the Chemical Board and Defendant Provost as Vice Chairman. *Id.* at 25–26. Defendants Klein, Mahone, and Weiss also joined the Chemical Board following the merger. *Id.* at 26.

On June 13, 2016, Talmer filed a proxy statement with the SEC. ECF No. 46 at 29. The statement outlined the proposed merger with Chemical and recommended that shareholders affirm the merger. *Id.* It explained that the Talmer Board considered KBW's financial analysis to be an

accurate and fair valuation of Talmer. *Id.* at 30–32. The statement made no mention of the Talmer Board ceasing its past strategy of acquiring other banking institutions. *Id.* at 32.

On July 7, 2016, Talmer filed a supplemental disclosure modifying the proxy statement. ECF No. 46 at 34. It explained that Talmer did not anticipate making any future acquisitions, which was reflected in KBW's financial analysis of the merger. *Id*. The disclosure also stated that KBW met with Chemical in July 2015 and October 2015. *Id.* at 37. It explained that KBW had presented to Chemical the strategic rationale and potential financial impact of the merger with Talmer. *Id.* at 37–40. On July 14, 2016, a majority of Talmer shareholders approved the merger of Talmer and Chemical. ECF No. 47-2 at 2.

On January 25, 2016, the Talmer Board approved the merger agreement. ECF No. 46 at 25. The day before the merger was announced, Talmer's closing price was $16.00 per share. *Id.* Chemical offered $15.64 per Talmer share. *Id.* at 26. This offer price was almost $3 below the stock's recent market high of $18.71 per share in December 2015. *Id.* at 3. The stock's 52-week average had been $16.26 per share. *Id.* Furthermore, Livonia claims that only the stock options of Talmer's officers and directors immediately vested. *Id.* at 26. 25% of those options were eligible for immediate cash payment. *Id.*

**B.**

In response, on February 22, 2016, Livonia filed a claim in state court against Chemical and individual members of the Talmer Board.[1] ECF No. 47-3 at 1–2. On October 31, 2016, Livonia filed its second amended complaint to include KBW. *Id.* In it, Livonia alleged that members of the Talmer Board breached their fiduciary duties of loyalty to Talmer's shareholders. ECF No. 47-4

---

[1] The individual members of the Talmer Board that were listed as defendants are Gary Torgow, David T. Provost, Gary S. Collins, Max A. Berlin, Jennifer M. Granholm, Paul E. Hodges III, Ronald A. Klein, Barbara J. Mahone, Robert H. Naftaly, Albert W. Papa, Thomas L. Schellenberg, and Arthur A. Weiss.

at 28. It further alleged that KBW and Chemical aided and abetted the Board members in this breach. *Id.* ECF No. 47-4 at 29–30. It also contained class action allegations. ECF No. 47-3 at 2. However, Livonia did not timely certify the class and the class action allegations were deemed stricken. *Id.* On October 10, 2016, Judge Potts issued a scheduling order requiring discovery to be completed by July 27, 2017. On October 18, 2017, she issued an amended scheduling order requiring discovery to be completed by April 20, 2018.

Defendants filed a motion for summary disposition. Under Michigan law, a court may grant summary disposition when there is "no genuine issue as to any material fact." MCR 2.116(C)(10). Livonia did not file a written response to the motion. ECF No. 47-3 at 1. On April 11, 2018, Judge Potts held a hearing and on May 11, 2018, granted Defendants' motion for summary disposition. *Id.*

Meanwhile, on July 31, 2017, Kevin Nicholl (also a Talmer shareholder) filed a claim against KBW and the same members of the Talmer Board. ECF No. 47-2 at 1–2. Defendants claim that this second case was filed because Plaintiff was unable to certify the class in the first case. ECF No. 47 at 2–3. Plaintiff has not addressed this issue. In his complaint, Nicholl raised the same claims raised by Livonia in the prior lawsuit, specifically breach of fiduciary duty and aiding and abetting. ECF No. 47-5 at 20–22. Nicholl also raised class action allegations. ECF No. 47-2 at 1–2. However, Nicholl also failed to timely certify the class and the class actions allegations were denied. *Id.* In response, Nicholl filed an amended complaint adding Livonia and Regina Lee as plaintiffs. *Id.*

Defendants filed a motion for summary disposition to which the plaintiffs filed a response. ECF No. 47-2. Judge Potts held a hearing on April 11, 2018, the same day she heard arguments for the other action brought by Livonia. On May 8, 2018, Judge Potts granted Defendants' motion

for summary disposition. Among other things, the plaintiffs had argued that summary disposition was premature because discovery was not yet complete. However, Judge Potts found that "further discovery does not stand a fair chance of uncovering factual support for Plaintiff's claim." *Id.* at 5–6.

Judge Potts's conclusions in both cases are consistent. She determined that Defendants did not breach their fiduciary duties of loyalty. Any potential conflicts of interest by the Talmer Board were fully disclosed to Talmer's shareholders, including offers of future employment and the stock offer tender for certain Defendants. ECF No. 47-2 at 4–5; ECF No. 47-3 at 3–5. Specifically, she found that the proxy statement extended the stock offer tender to all shareholders, not just the Talmer Board. ECF No. 47-2 at 6; ECF No. 47-3 at 4.

She also found that KBW's previous interactions with Chemical were fully disclosed to the Talmer Board and shareholders. She held that:

> The minutes of the November 3, 2015 meeting of the Strategic Initiatives Committee confirms that the Committee was fully aware of the potential conflict, but concluded that any potential conflict was not disabling…The Committee's conclusion was reported to the full Board on November 11, 2015.

ECF No. 47-2 at 4. She found that this was also true of KBW's alleged involvement with Chemical on the Talmer merger. She stated that:

> Mr. Harasimowicz disclosed at the meeting that he had a strong relationship with Chemical, that he was the 'primary KBW relationship banker for Chemical,' that KBW had earned about $7.6 million in fees from Chemical since 2013, and that his first conversation with Chemical regarding Talmer occurred in May, 2014. In addition, the proxy statement disclosed KBW's July 21, 2015 presentation to Chemical, which included information about a potential merger with Talmer, as well as the information disclosed at the November 3, 2015 Strategic Initiatives Committee meeting regarding KBW's potential conflict.

ECF No. 47-2 at 5. Judge Potts also found that KBW did not manipulate Talmer's financial projections. *Id.* at 7–8. The supplemental proxy statement disclosed to shareholders that KBW did not consider any future acquisitions by Talmer in its financial analysis. *Id.*

Both of Judge Potts's decisions are currently on appeal before the Michigan Court of Appeals. ECF No. 49 at 4.

## III.

Defendants have now moved for dismissal of Livonia's federal claims pursuant to Federal Rules of Civil Procedure 12(b)(6). A pleading fails to state a claim under Rule 12(b)(6) if it does not contain allegations that support recovery under any recognizable legal theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a Rule 12(b)(6) motion, the Court construes the pleading in the non-movant's favor and accepts the allegations of facts therein as true. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). The pleader need not provide "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In essence, the pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" and "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678–79 (quotations and citation omitted).

## IV.

Defendants argue that Livonia's claims are precluded by the prior state court proceedings. They then argue that regardless of whether Livonia's claims are precluded, Livonia has not stated a claim for relief. Both arguments will be addressed in turn.

### A.

Preclusion prevents a previously adjudged claim or issue from being decided again in a subsequent case. "[A] right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction…cannot be disputed in a subsequent suit between the same parties

or their privies." *Montana v. U.S.*, 440 U.S. 147, 153 (1979) (quoting *Southern Pacific R. Co. v. United States*, 168 U.S. 1, 48-49).

Under the Full Faith and Credit Clause of the U.S. Constitution, a state judicial proceeding may preclude a claim before a federal court. *See* U.S. CONST. art. IV, §1. The judicial proceedings of a state "have the same full faith and credit in every court within the United States…as they have by law or usage in the courts of such State…from which they are taken." 28 U.S.C. §1738. When presented with a state court judgment related to an exclusively federal claim, the federal court must first determine whether the claim or issue would be precluded under state law. *Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 375 (1996) (citing *Marrese*, 470 U.S. at 381–383). If so, the court must then determine whether an exception should be made to the Full Faith and Credit Clause and not grant preclusive effect to the state court decision. *Id.*

Defendants argue that Livonia's claims are precluded by res judicata (claim preclusion) and collateral estoppel (issue preclusion). Both arguments will be addressed in turn.

**1.**

Res judicata (claim preclusion) prevents a party from bringing a claim that has already been resolved in a prior judgment. Under Michigan law, a prior judgment will have preclusive effect upon a subsequent claim when: (1) the first action was decided on the merits, (2) the matter at issue in the second case was or could have been resolved in the first, and (3) both actions involve the same parties. *Bd. of Cty. Rd. Comm'rs for the Cty. of Eaton v. Schultz*, 205 Mich. App. 371, 375–376 (Mich. Ct. App. 1994).

Livonia's claim is not precluded because it could not have raised its 1934 Act claim in Michigan state court. 15 U.S.C. §78aa(a) grants federal courts exclusive jurisdiction over claims brought under the 1934 Act. Livonia is bringing its claims under §14(a) and §20(a) of the 1934

Act. ECF No. 46 at 40–45. Livonia could not have brought these claims in the prior state court proceedings because the claims fall within the exclusive jurisdiction of the federal courts. The state court would have lacked subject matter jurisdiction to decide the claim. Thus, the claim fails under the second element of Michigan's law of claim preclusion and cannot be dismissed under this doctrine.

Defendants cite to *Chakan v. City of Detroit* to support their assertion that Livonia's claims are precluded by res judicata. ECF No. 47 at 8–10. The court in *Chakan* held that the plaintiff's claim under Title VII of the Civil Rights Act in federal court was precluded by a prior state court decision. *Chakan v. City of Detroit*, 998 F.Supp. 779 (E.D. Mich. 1998). However, Title VII does not fall within the exclusive jurisdiction of the federal courts. *Yellow Freight System, Inc. v. Donnelly*, 110 S.Ct. 1566, 1567 (1990). In contrast, the 1934 Act does fall within the exclusive jurisdiction of the federal courts. Thus, Livonia's claim would not be precluded by the doctrine of res judicata. *See Kaufman v. BDO Seidman*, 984 F.2d 182, n. 5 (6th Cir. 1993) ("§1738 does not require claim preclusion in exclusive federal jurisdiction cases.") (citing *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373 (1985)).

In their reply, Defendants argues that *Matsushita Elec. Indus. Co. v. Epstein* held that "courts with exclusive jurisdiction *must* give preclusive effect to state court orders unless Congress exempted the claim from the Full Faith and Credit Act." ECF No. 52 at 2 (emphasis present in original). This mischaracterizes *Matsushita*. In that case, a Delaware court entered a settlement agreement to resolve for a 1934 Act claim. *Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367 (1996). The plaintiff later challenged the court's authority to do so. The Supreme Court ultimately held that state courts could approve the release of 1934 Act claims. It explained that "the Delaware action was not 'brought to enforce' any rights or obligations under the Act." *Id.* at 381. The

Delaware court "never trespassed upon the exclusive territory of the federal courts." *Id.* at 382. It had simply released the right to later bring a 1934 Act.

Thus, *Matsushita* does not stand for Defendants' proposition that "courts with exclusive federal jurisdiction *must* give preclusive effect to state court orders." ECF No. 52 at 2. *Matsushita* did not grant state courts the power to adjudicate claims under the 1934 Act. Judge Potts could never have adjudicated Livonia's claims under the 1934 Act because the claims lie within the exclusive jurisdiction of the federal courts.

**2.**

Collateral estoppel prevents a party from relitigating an issue of law or fact that a prior case has already resolved. *New Hampshire v. Maine*, 121 S.Ct. 1808, 1814 (2001). Among other things, this prevents parties from litigating an issue in federal court that has already been resolved by a state court. *See Marrese*, 470 U.S. at 380. However, unlike res judicata, collateral estoppel may preclude a party from litigating a claim that falls within the exclusive jurisdiction of the federal courts when a state court has already made a determination on the same factual issues. *Kaufman v. BDO Seidman*, 984 F.2d 182, 183–184 (6th Cir. 1993). This requires a careful analysis to ensure that the issue is the same in both the prior state court decision and the current federal court proceeding. *Id.* at n. 5. ("Courts should be careful in applying issue preclusion in cases involving exclusive federal jurisdiction, to insure that relitigation is precluded only when the issues are truly identical.")

Under Michigan law, issue preclusion applies when "1) there is identity of parties across the proceedings, 2) there was a valid, final judgment in the first proceeding, 3) the same issue was actually litigated and necessarily determined in the first proceeding, and 4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the earlier proceeding."

*Darrah v. City of Oak Park*, 255 F.3d 301, 311 (2001) (citing *People v. Gates,* 452 N.W.2d 627, 630–31 (Mich. 1990)). Each of these factors will be addressed in turn.

i.

The first factor requires "identity of parties across the proceedings." *Darrah*, 225 F.3d at 311. In the state court proceeding *Livonia v. Chemical*, the plaintiffs were Livonia and Regina Gertil Lee. ECF No. 47-3. The defendants were Chemical, KBW, and individual members of the Talmer Board. *Id.* In *Nicholl v. Torgow*, the plaintiffs were the same with the addition of Kevin Nicholl. ECF No. 47-2. The defendants were KBW and individual members of the Talmer Board. *Id.* In the current case, the plaintiff is Livonia and the defendants are Chemical, Talmer, and individual members of the Talmer Board. ECF No. 46.

The parties are not precisely identical between the state court proceedings and the current federal court proceeding. However, "substantial identity, not precise identity, is all that is required." *Local 98, Detroit, Michigan v. Flamegas Detroit Corp.*, 52 Mich.App. 297, 302–303 (Mich.Ct.App. 1974) (citing *Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381 (1940)). Substantial identity is achieved here. The plaintiffs in all proceedings were Talmer shareholders. The defendants in all proceedings were associated with Talmer, Chemical, KB, and the merger at issue. Thus, there is an "identity of parties across the proceedings." *Darrah*, 225 F.3d at 311.

ii.

The second element requires "a valid, final judgment in the first proceeding." *Darrah*, 255 F.3d at 311. A ruling of summary disposition is usually deemed a valid final judgment. *See Detroit v. Qualls*, 434 Mich. 340, 357, n. 27 (1990). However, the ruling is not final for purposes of collateral estoppel while it is under appeal.[2] *Leahy v. Orion Twp.*, 269 Mich.App. 527, 530

---
[2] This differs from res judicata (claim preclusion). For purposes of res judicata (claim preclusion), a judgment is final even when it is pending appeal. *City of Troy Building Inspector v. Hershberger*, 27 Mich.App. 123, 127 (1970)

(Mich.Ct.App. 2006) ("A decision is final when all appeals have been exhausted or when the time available for an appeal has passed."); *Cantwell v. City of Southfield*, 105 Mich.App. 425, 429–430 (Mich.Ct.App. 1981) ("While res judicata (and its corollary, collateral estoppel) applies only to final decisions, a decision is final when all appeals have been exhausted or when the time for taking an appeal has passed."). In the prior state court proceedings, Judge Potts granted summary disposition in favor of Defendants. ECF Nos. 47-2, 47-3. However, her judgments are not final for purposes of collateral estoppel because they are currently on appeal before the Michigan Court of Appeals. ECF No. 49 at 21.

For this reason, the case will be stayed pending appeal. As explained above and below, the other elements of collateral estoppel are fulfilled. However, it would be premature to conclude that Livonia's claim is precluded by collateral estoppel when it lacks the element of finality.

### iii.

Under the third element, "the same issue was actually litigated and necessarily determined in the first proceeding." *Darrah*, 255 F.3d at 311. The key issue in this case is whether the proxy statement contained misleading information or omitted material information. This fact is essential to resolving Count I of Livonia's amended complaint. In it, Livonia alleges that Defendants violated 17 C.F.R. §240.14a–9, which reads:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

---

("The rule in Michigan is that a judgment pending on appeal is deemed [r]es [j]udicata."); *In re* Jay D. Spencer, 539 B.R. 770, 774, n. 5 (Bankr. W.D. Mich. 2015) ("In Michigan, the pendency of an appeal deprives the decision under review of issue preclusive effect, but the doctrine of *res judicata* applies irrespective of an appeal.").

17 C.F.R. §240.14a–9. Livonia alleges that Defendants violated this provision by including misleading information in the proxy statement and failing to disclose material information. ECF No. 45 at 40. Specifically, information about KBW's relationship with Chemical, the tender offer for the board of directors, offers to the Talmer Board for future employment, and the viability of KBW's financial analysis.

However, Judge Potts resolved these issues in her prior rulings. During those proceedings, Livonia claimed that the members of the Talmer Board breached their fiduciary duties and that KBW aided and abetted them in this breach. ECF No. 47-5 at 20–22. In order to resolve those claims, Judge Potts addressed the same issues that Livonia has presented here.

On the issue of KBW's relationship with Chemical, Judge Potts determined that KBW's potential conflicts of interest were fully disclosed to the Talmer Board and shareholders. This was confirmed by multiple sources, including the affidavit of James Harasimowicz, managing director of KBW. He attested that Chemical never engaged KBW to assist with the Talmer merger. ECF No. 47-2 at 4. Furthermore, during a Talmer Initiative Committee meeting, Mr. Harasimowicz disclosed his affiliation with Chemical to the Committee. *Id.* After considering this information, the Committee determined that KBW could still represent Talmer in the merger. *Id.* at 4. Additionally, the proxy statement informed shareholders of this potential conflict of interest and the shareholders still voted to approve the merger. *Id.* at 5.

Judge Potts also addressed the issue of the tender offer and future employment offers for Talmer Board members. She found that the proxy statement stated that the shareholder tender was offered to all shareholders, not just the Board. ECF No. 47-2 at 6. Furthermore, she found that both the Talmer Initiative Committee and shareholders were informed of the offers of future employment for certain Talmer Board members. The Committee received a term sheet which

"proposed that, after the merger, five Talmer directors would be on the Chemical board and that new, two-year employment contracts would be awarded to two Talmer directors." *Id.* Judge Potts based this conclusion on Plaintiff's amended complaint. *Id.* ("Thus, by Plaintiff's own pleading, the directors' interest was known to the Committee and the Committee approved the term sheet."). Additionally, Judge Potts determined that the shareholders and Talmer Board were notified through the proxy statement that Defendants Torgow and Provost had employment agreements. *Id.* at 7. Judge Potts ultimately concluded that "Plaintiff has not demonstrated a genuine issue of material fact with respect to whether the employment agreements and proposed board memberships were disclosed before the shareholders approved the merger, and Defendants are entitled to summary disposition on this claim." *Id.*

Judge Potts also addressed the issue of the viability of KBW's financial analysis. She found that Talmer's decision to cease its prior acquisition strategy was disclosed in the supplemental proxy statement. ECF No. 47-2 at 7–8. Furthermore, Livonia in its state court amended complaint admitted that Talmer disclosed through the proxy statement that its financial projections "did not incorporate any further acquisitions for Talmer." *Id.* at 8.

In Count II of its complaint, Livonia alleges that Defendants, acting as controlling persons, were responsible for the misleading statements and material omissions in the proxy statement. ECF No. 46 at 42–45. However, Judge Potts already determined that the proxy statement did not contain any misleading statements or material omissions. Livonia argues that this issue differs between the state court proceeding and the current federal court proceeding because the standard of liability is different. ECF No. 49 at 22–23. Under Michigan law, the plaintiff must prove that defendants intentionally inflicted harm on shareholders. MCL §450.2209(1)(c). Under the 1934 Act, the plaintiff must prove only that defendants acted at least negligently. *Fradkin v. Ernst*, 571 F.Supp.

829, 843 (1983). However, the level of liability is irrelevant because Judge Potts already determined that the proxy statement did not contain any misleading statements or material omissions. This forecloses the need to determine liability because there were no misstatements or omissions in the first place.

Livonia has advanced the same issues that it presented in state court. In that instance, it raised the issues in the context of a breach of fiduciary duties. Here, Livonia presents them in the context of the 1934 Act. However, this does not change the fact that they remain the same issues that Judge Potts already ruled upon. This Court cannot pass judgment upon them a second time.

### iv.

Under the fourth element, the parties must have had "a full and fair opportunity to litigate the issue." *Darrah* 255 F.3d at 311. Livonia argues that it did not have the opportunity to litigate the issues in this case because Judge Potts did not address all of its allegations in her decision. ECF No. 49 at 23. However, the inquiry is not whether the court addressed every issue. That question was addressed in the previous factor. Rather, the inquiry is whether the parties actually had an opportunity to present and argue the issues in question.

Livonia litigated its claims in the two prior state court proceedings, *Nicholl v. Torgow* and *Livonia v. Chemical*. ECF Nos. 47-2, 47-3. Judge Potts gave Livonia the opportunity to file its complaints and responses and to participate in hearings. Contrary to its arguments, Livonia was given a full and fair opportunity to litigate the issues of this case during the state court proceedings.

### B.

Defendants argue that regardless of whether the prior state court judgments are preclusive, Livonia has failed to state a claim for relief. This argument will not be addressed because but for the appeal pending before the Michigan Court of Appeals, Livonia's claims would be precluded at this time by collateral estoppel. *See* Section A.2.ii.

**IV.**

Accordingly, it is **ORDERED** that the case will be **STAYED** until the Michigan Court of Appeals has addressed the pending appeals.

It is further **ORDERED** that Defendants' motion to dismiss, ECF No. 47, is **HELD IN ABEYANCE** until the Michigan Court of Appeals has issued judgment on the prior state court judgments.

It is further **ORDERED** that Plaintiff and Defendants will submit a proposed scheduling order OR CLOSING DOCUMENTS, as appropriate, within (30) days after rulings on the appeal before the Michigan Court of Appeals.

Dated: November 8, 2018				s/Thomas L. Ludington
						THOMAS L. LUDINGTON
						United States District Judge

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on November 8, 2018.

				s/Kelly Winslow
				KELLY WINSLOW, Case Manager